OPINION OF THE COURT
Anthony R Corso, J.
This matter comes before this court for decision after trial. The facts in this case are as follows:
Plaintiff and his family are insureds under a medical insurance plan provided by plaintiff’s employer, and underwritten *443 by defendant. It has been stipulated that the insurance contract exists and that plaintiff has complied with the defendant’s claims procedure. Plaintiff had been reimbursed for medical bills which were the same or similar in nature to those rejected after January, 1975. The policy covers reimbursement for "drugs and medicine covered by written prescription of a physician.”
Plaintiffs testified that they were suffering from ill health prior to being treated by Dr. Congram, a physician, and that afterwards they no longer suffered from any medical complaints.
The "drugs” prescribed in this case were vitamins, some of which were obtainable "over the counter” but were prescribed for plaintiffs by their physician.
The essential issue here is whether or not plantiffs are entitled to be reimbursed for these items under their policy of medical insurance. Peripheral to this discussion is the fact that some of the vitamins were obtainable without prescription and whether defendant waived any rights to reject payment claims since similar claims prior to January, 1975 had always been recognized by defendant.
This court initially notes, as was testified to by all three medical experts for both sides, that medicines are substances used for treating diseases. Defendant’s expert, Dr. Teich, stated that the substances prescribed were "nutrients” and not medicines, because they were vitamins. Defendant’s position is essentially factual, to wit: "[T]hat the Travelers declined payment on the grounds that there is no evidence of any vitamin shortage or diagnosed disease, and that these vitamins are merely acting as a nutritional supplement. Therefore there is no coverage under the policy.”
Defendant argues further that as a prerequisite to reimbursement the expenditure must be reasonable and necessary.
The contract itself entitled "Insurance Benefits for all Grumman Employees and their families” states that covered medical expenses include all reasonable charges for services and supplies listed as Type I and II. Under Type I it states, "[W]ith respect to Type I Expenses, only expenses which are recommended and approved by the attending physician shall qualify as 'Covered Medical Expenses’ ”. Under medical supplies it states, "[D]rugs and medicines covered by written prescription of a physician”.
The introduction to the contract states: "What are Covered *444 Medical Expenses? Covered Medical Expenses means reasonable charges actually incurred upon the recommendation and approval of the attending physician for the services and supplies listed below. These must be required for treatment of accidental bodily injury or sickness of a covered individual”.
Initially, it would appear that the ultimate determinations under the contract are left to the determination of the attending physician. Reasonableness and the existence of a bona ñde illness are findings which initially must be left to the physician to determine at the time. The central issue raised here then is not the bona fide quality of the illness or the reasonableness of the medication, but whether under any circumstances vitamins may be considered "Drugs and Medicines”.
Webster’s Third New International Dictionary (p 1402) defines a medicine as "a substance or preparation used in treating disease * * * a drug or similar substance (as a potion, poison, or elixir) applied to non medical use”. A drug is defined (p 695) as "a substance used as a medicine or * * * a substance recognized in an official pharmacopoeia or formulary”.
Defendant states, "Admittedly, where a vitamin is administered as a medicine it is considered to be a drug”, citing Culver v Nelson (237 Min 65; 98 ALR2d 1063, 1082, § 4 [c]). In the Culver case (supra) a retail grocer sought a declaratory judgment determining the proper construction to be placed on the pharmacy act insofar as it affected his right, and the right of others similarly situated, to sell at retail, vitamin tablets, capsules or liquids containing vitamins, without the supervision of a pharmacist. In that case the Minnesota court held that vitamins were drugs within the definition contained in the pharmacy act. The court went on to point out that taken in limited quantities some vitamins would do no harm, but if taken in large amounts some vitamins were harmful. Thus the right to sell vitamins without the supervision of a pharmacist could not be permitted. (See 28 CJS, Drugs and Narcotics, Supplement, § 32.)
Defendant also states, "whether a vitamin preparation is a drug or a food product is a question of fact to be determined under the circumstances in each case”, citing State v Baker (229 NC 73).
Section 6802 of the Education Law of New York defines "Drugs” as,
"a. Articles recognized in the official United States pharma *445 copeia, official homeopathic pharmacopeia of the United States, or official national formulary.
"b. Articles intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man or animals.”
In National Nutritional Foods Assn. v Weinberger (512 F2d 688), manufacturers and distributors brought an action against the Secretary of Health, Education and Welfare for declaratory and injunctive relief against the regulations. The court considered the commissioner’s reasons for classifying higher levels of vitamins as "drugs”. The court concluded that it was conceivable that the commissioner had not fully stated his reasons for this classification and that what may have appeared as "arbitrary and capricious” was in fact based on considerable information that vitamins in higher dosage forms were almost exclusively used for therapeutic purposes. The court (P 702) determined that the commissioner’s determination should not be invalidated, and the case was remanded. This case cited by defendant states therefore that higher dosage vitamins used for therapeutic purposes are "drugs” but at the same time that not all vitamin preparations are classified as "drugs”.
The question of whether a particular vitamin is a drug must be determined on a case-by-case basis. Here the contract clearly covers "drugs and medicine covered by written prescription of a physician”. (State v Baker, supra.)
This court makes the following finding of facts:
(1) All of the vitamins herein were purchased with a physician’s prescription.
(2) All were determined by the physician to be reasonable and necessary to treat the patient’s illness.
(3) Approximately half were available only by a physician’s prescription.
(4) All of the vitamins were purchased on the recommendation and approval of the attending physician.
(5) The physician treated the patients for an illness by use of the prescribed vitamins, in large quantities.
(6) The testimony indicates that this treatment produced a cure.
In the case of National Nutritional Foods Assn. v Food & Drug Admin. (504 F2d 761, 788), cited in National Nutritional Foods Assn. v Weinberger (supra, p 702), the court took the position that although a "drug” is defined as an article listed *446 in the official U. S. Pharmacopoeia, since all vitamins and minerals are recognized in the official Pharmacopoeia or Formulary, this would lead to the conclusion that all vitamin and mineral preparations were drugs.
Clearly all vitamins are not "drugs” but on a case-by-case basis and under the provisions of this contract the vitamins given by prescription of a physician absent a showing of fraud were covered.
Accordingly the court finds for plaintiff.