OPINION OF THE COURT
Daniel Palmieri, J.
Plaintiff has sued for reimbursement under his health insurance policy with defendant for laboratory charges incurred on three separate occasions: September 2, 1987, for mercury vapor testing, in the amount of $125; $875 for blood laboratory work performed in August 1986, and $425 for blood laboratory work performed in August 1987. The mercury vapor test was performed by a dentist and the blood tests by a *181 laboratory. All tests were performed at the request of the plaintiff physician, Dr. Miklos Boczko.
The defendant has refused to pay the charges on the ground that they are excessive in cost and not medically necessary.
Dr. Boczko testified as a witness for the plaintiff and Dr. Jerry Howard testified as a witness for the defendant. Also testifying were the plaintiff and Brian Flanagan, the defendant’s plan administrator.
The policy provides in substance that "Covered Medical Expenses” are the "Reasonable and Customary Charges” for covered medical services performed or supplies prescribed by a doctor due to sickness. A "Reasonable and Customary Charge” is the lowest of the actual charge, the usual charge or the prevailing charge in the geographic area. Covered medical expenses must be "Medically Necessary” and include, inter alia, services of doctors and diagnostic lab procedures. Exclusions from coverage are services which are not "Medically Necessary” in terms of generally accepted medical standards, experimental services or supplies and approximately 19 other items not relevant here.
Courts have uniformly held that where the provisions of a policy are clear and unambiguous, they must be given their plain and ordinary meaning, courts should refrain from rewriting the agreement, the policy must be construed in favor of the insured and ambiguities, if any, must be resolved in favor of the insured and against the insurer. (United States Fid. & Guar. Co. v Annunziata, 67 NY2d 229 [1986].) It is the insurer who bears the burden of proving that an exclusion is applicable. (Utica Mut. Ins. Co. v Prudential Prop. & Cas. Ins. Co., 103 AD2d 60 [2d Dept 1984].)
The practice of medicine is defined as "diagnosing, treating, operating or prescribing for any human disease, pain, injury, deformity or physical condition” (Education Law § 6521), and only a person licensed or otherwise authorized may use the title "physician”. (Education Law § 6522.)
The outer limits of coverage were established in Zuckerberg v Blue Cross & Blue Shield (108 AD2d 56 [2d Dept 1985], affd 67 NY2d 688 [1986]), where in evaluating treatment given to cancer patients in a Mexican clinic, the court ruled that the treatment of cancer with a dietary regimen of certain fruits, vegetables, medications, digestive aids and vitamins (and in some cases Laetrile) came within the policy exclusion for "experimental” in the sense that its effectiveness is not generally recognized.
*182 Plaintiff’s physician testified that he treats the whole person, with biochemical methods and emphasis on elemental deficiencies and food allergies. There has been no claim that the treatment is experimental or that Dr. Boczko is not practicing medicine, hence no such claim can be made with respect to any diagnostic testing performed at his request in the furtherance of treatment. It has been held that no clear line can be drawn distinguishing the practice of medicine itself from the administration of treatment at a physician’s directions. (Albright v Hook, 85 Misc 2d 403 [Civ Ct 1976]), upholding the inclusion of physical therapy for no-fault insurance threshold purposes.
Where a physician prescribed vitamins, it was held that reasonableness and the existence of a bona fide illness are findings which initially must be left to the physician to determine at the time (Palumberi v Travelers Ins. Co., 94 Misc 2d 442 [Dist Ct, Suffolk County 1976]), and the court allowed a claim for reimbursement for the cost of the vitamins while finding that their use was reasonable and necessary. Also nursing services when ordered by the physician have been found to be included in a policy (Little v Blue Cross, 72 AD2d 200 [4th Dept 1980]).
Where it was found that treatment by acupuncture was not covered (Norris v Metropolitan Life Ins. Co., 116 Misc 2d 296 [App Term 1982]), the basis for such finding was not medical necessity but rather the statutory definition of a physician.
The evidence is sufficient to establish that the plaintiff displayed symptoms which required the treatment of a physician, he sought such treatment from a duly licensed physician who, as an aid to ordering a treatment or therapy, ordered certain testing. In this respect, the testing laboratory is akin to a tool or an instrument of the physician. While implied, it cannot be said that the method of treatment chosen by the physician is not efficacious or that his medical theories so deviant from generally accepted medical practice as to be considered nonmedical treatment. In short, it should not be necessary in order to justify reimbursement for medical expenses that a patient be required to satisfy a committee, a board, or produce a plethora of testimonials from the mainstream of the medical establishment. It should be sufficient that he display symptoms, suffers illness and seeks treatment from one authorized to render same, all of which have been done in this case.
*183 The defendant does have the right, under the policy, to prove that the charges for the services were excessive and evidence was offered as to the nature of the mercury vapor test to indicate that the cost was excessive. This test was administered by a dentist, who (it was claimed) functioned not as a dentist but as a testing laboratory. No evidence was offered by the defendant as to the reasonableness of the blood laboratory charges, hence they are accepted as given.
Accordingly, the court finds for the plaintiff, in the amount of $1,300, that being the sum total of the blood testing and for the defendant with respect to the mercury vapor test.