OPINION OF THE COURT
Bernice D. Siegal, J.
This action was commenced by a provider of psychological services, plaintiff Medical Expertise, P.C., as assignee of Irina Moukha, against defendant Trumbull Insurance Company seeking a judgment for unpaid claims filed pursuant to New York’s No-Fault Law. On August 7, 2000, plaintiff filed a claim with Trumbull Insurance Company for psychological services rendered to assignor Moukha, purportedly as a result of a July 9, 2000 motor vehicle accident, seeking full reimbursement for services provided on July 11, 2000 including psychiatric evaluation of records ($67.24); psychiatric diagnostic interview ($194.58) and five psychodiagnostic tests with interpretations and report ($139.30 for each of the five tests); explanation and interpretation of results to primary physician ($103.31) rendered on July 18, 2000; and one psychotherapy session held on August 1, 2000 ($120). The diagnosis listed was “acute stress disorder.” The claim included an assignment and authorization and a self-referral consent and authorization form both executed on July 11, 2000. The following psychodiagnostic tools were administered: TESI (traumatic event sequelae inventory), BDI (Beck depression inventory), BAI (Beck anxiety inventory), BHS (Beck hopelessness inventory), SS-77 (psychiatric symptom check list), NSC (neuropsychological check list) and mental status examination. A letter of medical necessity issued by plaintiff was also included. Defendant insurer denied the claim on the basis of a peer review. Both the plaintiffs provider, Dr. S. Trier, and defendant’s peer review psychologist, Dr. Bruce Fisher, testified at trial. The peer review psychologist never interviewed the assignor, rather he rendered his decision to deny the claim on the basis that the psychodiagnostic tools were used prematurely. For example, in the Beck inventory, a question is posed: “how have you been feeling for the past seven days?” In *391 addition, Dr. Fisher was critical of using diagnostic tests instead of personal interviews.
Preliminary Evidentiary Issue
After plaintiff had established its prima facie case through its provider, defendant, upon cross-examination, sought to introduce into evidence the NF-10 denial of claim form from plaintiff’s file as proof of a proper denial. Plaintiff objected and the court admitted the NF-10, subject to memoranda of law on the permissibility of plaintiff’s provider laying the proper foundation for the admissibility of a business document generated by defendant insurance company. Determining whether a proper foundation can be laid through another entity’s business file and witness requires a brief history of the business records exception to the hearsay rule and its evolution.
Clearly, “[r]ecords made in the regular course of business are hearsay when offered for the truth of their contents” (Prince, Richardson on Evidence § 8-301 et seq. [Farrell 11th ed]). CPLR 4518 (a) creates in New York a business records exception to the hearsay rule to alleviate a harsh result in many valid claims. This exception to the hearsay rules continues to evolve, both by legislative initiative and by judicial construction, to marry the requirements of modern day businesses to the foundational requirements of this exception. For example, this rule was amended by the State Legislature in 2002 to include “tangible evidence” of an electronic record stored in the ordinary course of business as a “true and accurate” representation of the electronic record (CPLR 4518 [a]).
The courts themselves have liberally construed the application of this exception to hearsay. (See, People v Etienne, 192 Misc 2d 90 [2002]; People v Markowitz, 187 Misc 2d 266, 269 [2001].) Nonetheless, the decisions have held fast to three foundation requirements:
“first, the record must be made in the regular course of business — reflecting a routine, regularly conducted business activity, needed and relied on in the performance of the functions of the business. Second, it must be the regular course of business to make the record — in other words, the record was made pursuant to established procedures for the routine, habitual, systematic making of such a record. Finally, the record must have been made at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter, assuring that the recollection is fairly accurate and the *392 entries routinely made.” (People v Cratsley, 86 NY2d 81, 89 [1995].)
The very heart of this hearsay exception lies in an inherent understanding that the business of litigants is not to provide testimony in the courtroom but to conduct business outside of the courtroom. Consequently, a business record is admissible even though the person who prepared it is unavailable to testify to the acts or transactions. (Clarke v New York City Tr. Auth., 174 AD2d 268 [1992].) The rule obviates the need for the maker of the document to be a witness at trial so long as the document meets the foundational requirements.
Naturally, in most instances, the proponent of the business document could lay the foundation for admission into evidence of its own business record, as it should have knowledge that the document was made in the regular course of its business and the record-keeping practices of the business. The general rule precludes the admission of a writing made by another business entity because “[s]uch papers * * * are not made in the regular course of business of the recipient, who is in no position to provide the necessary foundation testimony as to the regularity and timeliness of their preparation or the source of information contained in the records.” (Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C4518:l, at 105.) However, the business record exception has expanded to permit the recipient to lay the foundation given "the relationship between the two entities and the nature of the records in question, including the circumstances of their preparation.” (Alexander, 2001 Supp Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR C4581:l, 2003 Pocket Part, at 36.) Given the nature of modern transactions, a proponent of the hearsay exception hopes to be able to provide the proper foundation for a document not made in the regular course of its business, but created by another entity and yet retained in its file. Nonetheless “the mere filing of papers received from other entities, even if they are retained in the regular course of business, is insufficient to qualify the documents as business records (see Burgess v Leon’s Auto Collision, 87 Misc 2d 351 [1976], affd 91 Misc 2d 128 [1977])” (Standard, Textile Co. v National Equip. Rental, 80 AD2d 911, 911 [1981] [wherein plaintiffs employee had not the requisite knowledge of defendant’s record keeping]).
The assurance that the documents sought to be admitted are reliable and trustworthy lays at the heart of this exception. (See Air Land Forwarders, Inc. v United States, 172 F3d 1338 *393 [1999]; Munoz v Strahm Farms, Inc., 69 F3d 501 [1995].) In People v DiSalvo (284 AD2d 547 [2001]), the Appellate Division held that a prosecution witness could lay a proper foundation for the admission of documents neither created by the county nor the witness, but rather created by the defendant but regularly relied upon by the county. The county, in DiSalvo, regularly relied on this “dump tickets” (the amount of refused dumped) in making its invoices. The witness who lays the foundation in DiSalvo, although he had no personal knowledge of the documents nor was he affiliated with the entity that created those documents, had knowledge of the industry and the regular course of business. (Id.) Likewise, if such business records from a separate entity are used in the preparation of documents and not “the mere filing of papers received from other entities,” such business records may be admitted under the exception. (See Prestige Fabrics v Novik & Co., 60 AD2d 517, 518 [1977].) These records, received from a distinct business, must however be “fully incorporated into the [recipient’s] records made in the regular course of business” (Plymouth Rock Fuel Corp. v Leucadia, 117 AD2d 727, 728 [1986]). In Plymouth, the delivery tickets were created by contract truckers of the plaintiff. Plaintiff was able to establish a sufficient foundation for the admission of the tickets because the information contained therein was used in the preparation of plaintiff’s invoices. (Id., at 728.) The requisite indicia of reliability had been met by stretching the boundaries of this exception to embrace more complicated business transactions.
Similarly, the Court of Appeals has placed its imprimatur on a stretching of CPLR 4518 (a) by permitting the introduction of a psychological diagnostic test report contained in a business entity’s file for the truth of its contents, without having the preparer present or requiring that the preparer be an employee of that very entity. (People v Cratsley, supra.) The Court held that while the witness could not relate the report maker’s specific record making practices, she articulated that the report met statutory and regulatory requirements. (Id., at 90.)
In the instant matter, the document sought to be admitted was generated by defendant insurance company to deny benefits under the No-Fault Law and regulations thereto. Defendant, however, sought to introduce the denial of claims form (NF-10) through plaintiff provider who maintained the original denial in her file. The testimony adduced at trial revealed that the provider had knowledge of the business practices of defendant by virtue of her business: a psychologist who provides ser *394 vices to clients including those who might be covered by No-Fault benefits; she had submitted many claims to this defendant and was aware of the practice of the defendant and she maintained the NF-10 in her file. Most significantly, plaintiff not only retained and maintained the NF-10 in her file but relied on the document and acted upon the denial by filing this lawsuit. (Moreover, in response to the bill of particulars, which the court takes judicial notice, the plaintiff admitted receipt of the NF-10 and included a copy in its response.) Plaintiff argues that it does not have the opportunity to cross-examine the maker of the NF-10. This seems to undercut the raison d’etre for this exception to the hearsay rule, which allows the introduction of documents without the necessity of calling the maker as a witness. The court declines to strictly construe the business records exception, but rather admits the NF-10 into evidence in this instance as it was produced by plaintiff, maintained in its file and responded to in the regular course of business, all underscoring its reliability as a business record.
In an action to recover No-Fault Law benefits, the burden of proof imposed upon the plaintiff in proving a prima facie case consists of proof that a claim for medical services provided under the No-Fault Law was properly submitted to the insurer (Insurance Law § 5106 [a]; see St. Luke’s-Roosevelt Hosp. v American Tr. Ins. Co., 274 AD2d 511 [2000]). Once a prima facie case is established, the burden then shifts to defendant to prove its defense, e.g., the services rendered by plaintiff were not medically necessary.
Medical Necessity
With respect to medical necessity or the lack thereof, Dr. Trier explained the psychodiagnostic tools and the results. Through equally credible testimony, the defendant’s expert disputed the need for all the services rendered by the plaintiff. In recommending that no reimbursement be awarded, Dr. Fisher indicated that a mere two days after an accident is not sufficient time to establish a pattern as would be revealed by the self-reporting inventories (the psychodiagnostic tools used by plaintiff).
New York’s No-Fault Law mandates that services must be reasonable and necessary for reimbursement. Neither the statute nor New York case law provide a framework for deciding whether the claim submitted meets the threshold of what has been denominated as “medically necessary.” The court, however, notes with approval the definition of a medically neces *395 sary expense expressed by the New Jersey Supreme Court, to wit:
“[A] necessary medical expense under the [No-Fault] Act is one incurred for a treatment, procedure, or service ordered by a qualified physician based on the physician’s objectively reasonable belief that it will further the patient’s diagnosis and treatment. The use of the treatment, procedure, or service must be warranted by the circumstances and its medical value must be verified by credible and reliable evidence.” (Oceanside Med. Healthcare v Progressive Ins., 2002 NY Slip Op 50188[U], *5 [Civ Ct, Kings County, May 9, 2002], quoting Thermographic Diagnostics Inc. v Allstate Ins. Co., 125 NJ 491, 512, 593 A2d 768, 780 [1991].)
It is not whether or not some “positive” findings may be fashioned from the results of psychological tests, but rather could a psychologist hold an objective and reasonable belief that the tool used will further the patient’s diagnosis and treatment and whether that tool is warranted given the circumstances.
In the instant matter, the court finds that the “diagnostic” tools appear to be administered too soon after the motor vehicle accident and by the very nature of some of the questions, not appropriate, given the circumstances. Consequently, the diagnostic tests and evaluation and reports are deemed not “medically necessary.” However, the failure of the diagnostic tools does not totally negate the findings gleaned from the records review or personal interview with the assignor, nor the need for psychotherapy. The court finds that the psychiatric evaluation of records, psychiatric diagnostic interview examination, and psychotherapy session were medically necessary.
Accordingly, the court grants judgment for the plaintiff in the amount of $381.72 with statutory interest and legal fees.