OPINION OF THE COURT
Ellen Gesmer, J.
*247 Plaintiff Behavioral Diagnostics brings this action to obtain payment from defendant Allstate for services rendered by plaintiff to three of its patients, Marina Shaulov, Dwayne Dowdell and Maria Arevalo.* All three patients are insured by defendant Allstate under New York State No-Fault Insurance Law § 5101 et seq., and all three assigned their insurance benefits to plaintiff. The court conducted a full trial of this matter on January 26, 2004 and makes the following findings.
Facts and Procedural History
Plaintiffs assignors were all in motor vehicle accidents. They each received medical treatment from plaintiff Behavioral Diagnostics. The parties stipulated that the plaintiff had sent proper and timely verifications of claims, as required by the regulations of the Insurance Department (11 NYCRR 65-2.4), to Allstate; that plaintiff was the assignee of the three patients; and that the defendant had sent proper and timely denials of the claims, as required by 11 NYCRR 65-3.8. For each of the three patients, plaintiff sought payment from defendant for $194.57 for a diagnostic interview; $67.24 for “record evaluation”; $975.10 for seven hours of psychological testing; and $103.31 for “Interpretation/Explanation of Results.”
Allstate paid for the psychiatric interview for each patient, but denied payment of the other services based on its determination that they were not “medically necessary” as provided by 11 NYCRR 65-3.8 (b) (4).
Since the parties stipulated that the plaintiff had sent proper and timely verifications of claims, as required by 11 NYCRR 65-2.4, that plaintiff was the assignee of the three patients, and that the defendant had sent proper and timely denials of the claims, as required by 11 NYCRR 65-3.8, plaintiff met its burden of proving its claim (see Amaze Med. Supply Inc. v Eagle Ins. Co., 2003 NY Slip Op 51701[U] [App Term, 2d & 11th Jud Dists 2003]; Liberty Queens Med., P.C. v Liberty Mut. Ins. Co., 2002 NY Slip Op 40420[U] [App Term, 2d & 11th Jud Dists 2002]).
Consequently, the only issue to be determined at trial was whether the services rendered were medically necessary, as defined by Insurance Law § 5102 (a) (1). While there had been some uncertainty in the courts as to whether plaintiff bore the burden of showing medical necessity, or whether it was the *248 defendant’s burden to show lack of medical necessity, it is now clear in this judicial district that the burden rests on defendant to prove that the services rendered were not medically necessary (Choicenet Chiropractic P.C. v Allstate Ins. Co., 2003 NY Slip Op 50672[U] [App Term, 2d & 11th Jud Dists 2003]; A.B. Med. Servs. v GEICO Ins., 2 Misc 3d 26 [App Term, 2d Dept 2003]).
In support of its case, defendant presented the testimony of Dr. Michael Rosenfeld, who had conducted a peer review of the records of Ms. Shaulov, and Dr. Yakov Burstein, who had conducted peer reviews of Mr. Dowdell and Ms. Arevalo. Both Dr. Rosenfeld and Dr. Burstein are licensed psychologists with many years of experience in the field, and were qualified by the court to give expert testimony. Both Dr. Rosenfeld and Dr. Bur-stein testified that the diagnostic interviews were medically necessary. Dr. Burstein did not state any opinion as to the medical necessity for the record evaluation of Ms. Arevalo’s file. Both doctors testified with a reasonable degree of medical certainty that all of the other services rendered by plaintiff to the three patients were not medically necessary.
In rebuttal, plaintiff presented the testimony of Dr. Dimara Maksa, who has worked for plaintiff since June 2003, and became a co-owner of plaintiff in January 2004. The court qualified Dr. Maksa to render expert testimony. Dr. Maksa testified that all of the services rendered were medically necessary.
The Absence of a Definition of “Medical Necessity”
The No-Fault Insurance Law provides no definition for medical necessity. Rather, it states that claimants are entitled to recover for “basic economic loss,” which includes:
“(1) All necessary expenses incurred for: (i) medical, hospital (including services rendered in compliance with article forty-one of the public health law, whether or not such services are rendered directly by a hospital), surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services; (ii) psychiatric, physical and occupational therapy and rehabilitation; (iii) any non-medical remedial care and treatment rendered in accordance with a religious method of healing recognized by the laws of this state; and (iv) any other professional health services; all without limitation as to time, provided that within one year after the date of the accident causing the injury it is ascertainable that further *249 expenses may be incurred as a result of the injury. For the purpose of determining basic economic loss, the expenses incurred under this paragraph shall be in accordance with the limitations of section five thousand one hundred eight of this article.” (Insurance Law § 5102 [a] [1].)
The regulations, which set out the mandatory provisions for approved policies under the act, provide no additional guidance, and merely repeat the language of the statute (11 NYCRR 65.12 [e] [2]).
There is no appellate case law as yet on the subject. The increasing litigation on the issue confirms the comment of one court that it is not a “simple” issue (Albatros Med. v Government Empls. Ins. Co., 196 Misc 2d 656 [Civ Ct, Queens County 2003]). The determination of the issue turns on credibility (General Psychiatric Evaluation & Care v Kemper Ins. Co., 1 Misc 3d 499 [Civ Ct, Queens County 2003]), since courts cannot rely solely on the examining physician (Oceanside Med. Healthcare v Progressive Ins., 2002 NY Slip Op 50188[U] [Civ Ct, Kings County 2002]; cf. Tudor v Metropolitan Life Ins. Co., 143 Misc 2d 180 [Nassau Dist Ct 1989]), but must consider whether the treatment had a “valid medical purpose” and resulted in an “actual medical benefit” (Sunrise Med. Imaging, P.C. v Liberty Mut. Ins. Co., 2001 NY Slip Op 40091[U], *4 [Nassau Dist Ct 2001]).
Courts have taken care that their attempts to fashion a definition of “medical necessity” are consistent with the dual (and potentially contradictory) goals of the No-Fault Insurance Law of providing full compensation to motor vehicle accident victims who suffered “serious injury,” while simultaneously containing costs (Oceanside Med. Healthcare, P.C. v Progressive Ins., 2002 NY Slip Op 50188[U] [Civ Ct, Kings County 2002], citing Oberly v Bangs Ambulance, 96 NY2d 295 [2001], and Licari v Elliott, 57 NY2d 230 [1982]). The Oceanside court noted with approval the definition adopted by the New Jersey Supreme Court in Thermographic Diagnostics, Inc. v Allstate Ins. Co. (125 NJ 491, 512, 593 A2d 768, 780 [1991]):
“a necessary medical expense under the Act is one incurred for a treatment, procedure, or service ordered by a qualified physician based on the physician’s objectively reasonable belief that it will further the patient’s diagnosis and treatment. The use of the treatment, procedure, or service must be warranted by the circumstances and its medical *250 value must be verified by credible and reliable evidence. That standard, in our view, is consistent with the reparation objectives of the Act in that it would allow reimbursement for innovative medical procedures warranted by the circumstances that have demonstrable medical value but have not yet attained general acceptance by a majority of the relevant medical community.”
That definition was also discussed with approval in Elm Med., P.C. v American Home Assur. Co. (2003 NY Slip Op 51357[U] [Civ Ct, Kings County 2003]), and Medical Expertise v Trumbull Ins. Co. (196 Misc 2d 389, 395 [Civ Ct, Queens County 2003]). In Medical Expertise (at 395), Judge Siegal used the New Jersey definition to establish the following standard for determining the medical necessity of psychological tests: “could a psychologist hold an objective and reasonable belief that the tool used will further the patient’s diagnosis and treatment and whether that tool is warranted given the circumstances.” In Fifth Ave. Pain Control Ctr. v Allstate Ins. Co. (196 Misc 2d 801, 807-808 [Civ Ct, Queens County 2003]), Judge Agate, after considering the dictionary definitions and the text of a bill pending in the Legislature, formulated the following definition of medical necessity:
“treatment or services which are appropriate, suitable, proper and conducive to the end sought by the professional health service in consultation with the patient. It means more than merely convenient or useful treatment or services, but treatment or services that are reasonable in light of the patient’s injury, subjective and objective evidence of the patient’s complaints of pain, and the goals of evaluating and treating the patient.” (Id. at 807; internal quotation marks omitted.)
Consistent with this, Judge Agate went on to hold that “for treatment or services to be medically necessary, it must be reasonably determined by the health care professional in consultation with the patient, that the treatment or services are consistent with the patient’s condition, circumstances and best interest of the patient with regard to the type of treatment or services rendered, the amount of treatment or services rendered, and the duration of the treatment or services rendered.” (Id. [internal quotation marks omitted].)
Against this background, the court turns to the specific services at issue in this case.
*251 Medical Necessity of Psychological Testing
Dr. Rosenfeld testified that, as a general matter, it is not medically necessary to conduct psychological tests at the intake stage unless the psychologist conducting the intake interview could not establish a diagnosis based on the clinical interview alone. In this case, Dr. Rosenfeld stated that the clinical interview of Ms. Shaulov had provided an adequate basis for formulating a diagnosis so it was not medically necessary to perform psychological tests. Dr. Rosenfeld further commented critically that the tests which were administered to Ms. Shaulov were self-reporting tests which essentially duplicated the clinical interview. He explained that, in those circumstances where a diagnosis could not be formulated based on the clinical interview alone, it would be most appropriate to perform psychological tests which were complementary to the interview, such as projective tests, rather than self-reporting tests.
Dr. Burstein testified similarly that it is generally not medically necessary to perform psychological tests when intake interviews are conducted, but that it may be appropriate to do so under certain circumstances. However, he testified that it was not medically necessary to perform psychological testing of either Mr. Dowdell or Ms. Arevalo because their mental status exams and intake interviews provided an adequate basis for planning their treatment.
Dr. Maksa, who became licensed as a psychologist in New York State in December 2003, has had no experience in clinical practice. She testified that she “felt” that it was necessary to conduct psychological testing for every patient. She based this on a study which she claimed showed that psychological testing is valid and that clinical interviews sometimes lead to erroneous diagnoses. She did not state any of her opinions with a reasonable degree of psychological certainty. Moreover, she did not cite any basis for her claim that it was necessary to perform psychological testing in every case in order to formulate a treatment plan, regardless of the content of the intake interview.
Essentially, plaintiff took the position that the standard of care requires that psychiatric testing be performed on every patient at the time of intake, regardless of the particular circumstances presented by the patient. In the context of the psychological tests at issue in this case, this court holds that psychological tests are medically necessary if either (1) they are within the standard of care for good and accepted medical practice for all patients in that circumstance, or (2) the treating *252 physician made a reasoned and reasonable judgment, based on the particular circumstances of the patient, that the tests will assist the physician in formulating an accurate diagnosis and an appropriate treatment plan for the patient.
In order to apply this standard to these facts, the court must first assess the credibility of the doctors. The testimony of Dr. Rosenfeld and Dr. Burstein was credible, relevant and probative. Dr. Maksa, as the co-owner of the plaintiff, has an interest in the outcome of the action. In evaluating her testimony, I also considered that she has no clinical experience, and had been licensed for only one month at the time of trial. Accordingly, I do not credit her testimony that the standard of care required that psychological testing be performed on every patient at the time of intake. Moreover, Dr. Maksa did not successfully rebut the testimony of Dr. Rosenfeld and Dr. Burstein that the intake interviews of the three patients provided an ample basis for the formulation of a diagnosis and the establishment of a treatment plan. Indeed, Dr. Maksa demonstrated little familiarity with the records of the specific patients. She did not testify that the intake interviews created any uncertainty as to the diagnosis of the patients, nor did she testify that any of the psychological tests which were administered provided the treating doctors with any new information which affected their diagnoses or treatment plans for the patients. Moreover, while she testified that the Beck’s Anxiety Test may bring out different information than that elicited in a clinical exam, the plaintiff’s own claim forms indicate that the Beck’s Anxiety Scale was not administered to the patients in this case. Accordingly, the court holds that the psychological tests administered by the plaintiff were not medically necessary.
Medical Necessity of Record Review
Dr. Rosenfeld testified that since a psychologist should review records as an integral part of the diagnostic interview, it was not appropriate to bill for record evaluation as a separate item for Ms. Shaulov. Dr. Burstein testified similarly, with respect to Mr. Dowdell, that it was not necessary to examine medical records because the file did not list any medical records. Dr. Bur-stein did not testify as to the medical necessity of reviewing the medical records of Ms. Arevalo. Dr. Maksa did not rebut defendant’s showing that the record evaluations for Ms. Shaulov and Mr. Dowdell were not medically necessary. Indeed, when questioned about it, she responded, “What records?” Accordingly, the court finds that the record reviews were not medically necessary.
*253 Medical Necessity of Explanation of Results
With regard to the billing for ‘ Tnterpretation/Explanation of Results,” Dr. Rosenfeld testified that, ordinarily, psychologists will advise the patient of any findings as part of the initial consultation. Therefore, he testified that it would only be appropriate to bill separately for explaining results if the psychologist consulted with other family members, which would be appropriate, for example, if the patient were a minor. Dr. Rosenfeld noted that there was no documentation of any meetings with other family members. Similarly, Dr. Burstein interpreted the billing for Tnterpretation/Explanation of Results” to mean that there had been a consultation with the patient’s family, but he noted that there was no entry in the files of either Mr. Dowdell or Ms. Arevalo that such a meeting had occurred. He also stated that family consultations are appropriate where the family’s cooperation with the treatment is essential, but the treatment plans in these cases did not require participation by the patients’ families.
In response, Dr. Maksa claimed that the billing for ‘Tnterpretation/Explanation of Results” reflected a charge for sending a letter to the patients regarding the results of the psychological tests. However, she did not introduce the alleged letters. Accordingly, I find that the ‘ Tnterpretation/Explanation of Results” was not medically necessary.
Conclusion
Because defendant failed to proffer any testimony that the record evaluation of the file of Ms. Arevalo was not medically necessary, the court must find that it was medically necessary. The court holds that the remainder of the services billed by plaintiff were not medically necessary. Therefore, judgment should be entered in favor of the plaintiff in the amount of $67.24, together with statutory interest and attorneys’ fees, pursuant to 11 NYCRR 65.15 (h) and (i) and 65.17 (b) (6) (iii) and (v).

 In its complaint, plaintiff sought payments on behalf of five of its patients, but stipulated at trial that it had settled its claims as to assignors La’lsha Hillian and Nino Palagashvili.