David O. Boehm, J.
Plaintiff moves for summary judgment in this declaratory judgment action brought by her against the defendant insurance companies on the ground that defendant Aetna’s attempted imposition of a lien, under subdivision 2 of section 673 of the Insurance Law, against any tort recovery from defendant Liberty’s insured is impermissible. Aetna has cross-moved to amend its answer and to counterclaim against the plaintiff for moneys Aetna has paid her as first-party benefits, by virtue of its statutory lien, or to recover on the alternative theories of subrogation or unjust enrichment.
The facts contained in both the plaintiffs amended complaint and her counsel’s affidavit are uncontroverted and are sufficiently set forth in the papers to enable the court to make a determination upon the law (CPLR 3212, subd [b]). The defendants’ answers consist of only general denials except that, in Aetna’s wherefore clause, it requests a judgment declaring it to be a proper lienor. All parties request a determination of the statutory construction concerning the definition of a "covered person” under the Insurance Law in the context presented here.
Since there are no disputed issues of fact, summary judgment would ordinarily be the proper disposition, but it is denied for the reasons set forth below.
The facts are as follows. At approximately 7:30 p.m. on December 31, 1975, plaintiff was walking to her car in the parking lot of her apartment house, Webster Manor Apartments, in Webster, New York. As she was approaching her automobile she slipped and fell on accumulated ice and snow, sustaining serious injuries causing her to be hospitalized and disabled for a period of six months.
At the time of the accident, plaintiff had an automobile liability insurance policy with defendant Aetna. Webster Manor Apartments had a public liability insurance policy with defendant Liberty. Because the plaintiffs claim described the accident as occurring while she was entering upon the automobile, Aetna paid the plaintiff $8,413.22 for her medical *660 expenses and loss of wages on the basis that she was a "covered person” entitled to first-party benefits.
Because plaintiff is contemplating suit against Webster Manor Apartments, Liberty’s insured, to recover for her injuries, medical expenses and loss of wages suffered by her because of Webster Manor’s negligence in maintaining the parking lot in a hazardous and unsafe condition, Aetna asserts a lien for the amount it had paid to the plaintiff against any recovery she might receive from Webster Manor. Plaintiff commenced the present action seeking a judgment declaring that Aetna is not entitled to impose the lien against any such recovery because plaintiff, as to her action against Webster Manor, is not a "covered person”.
Subdivision 10 of section 671 of the Insurance Law defines a "covered person” as "any pedestrian injured through the use or operation of, or any owner, operator or occupant of, a motor vehicle which has in effect the financial security required by [the Vehicle and Traffic Law] or any other person entitled to first party benefits.” Subdivision 1 of section 672 of the Insurance Law sets forth who is entitled to the payment of first-party benefits:
"Every owner’s policy of liability insurance * * * shall * * * provide for * * * and every owner of a motor vehicle required to be subject to the provisions of this article * * * shall be liable for the payment of first party benefits to:
"(a) persons, other than occupants of another motor vehicle, for loss arising out of the use or operation in this state of such motor vehicle”.
Therefore, plaintiff’s status as a "covered person” depends upon whether her injuries arose out of the "use or operation” of a motor vehicle.
The Fourth Department has recently held that the "no-fault coverage required by the statute applies for use of the motor vehicle qua motor vehicle” (Reisinger v Allstate Ins. Co., 58 AD2d 1020). In this case the court denied recovery of first-party benefits sustained by plaintiff Reisinger "when the gas cook-stove in the insured 'mini motor home’ exploded during use. At the time the motor vehicle was parked in a campground and Mrs. Reisinger was preparing breakfast.”
In an earlier decision of first impression under article 18 of the Insurance Law, the Fourth Department denied recovery of first-party benefits to the driver of a snowmobile who ran into *661 an "unoccupied locked vehicle parked on a public street in front of the owner’s residence” (McConnell v Fireman’s Fund Amer. Ins. Co., 49 AD2d 676, 677). The court stated (p 677) that "[w]hile authority broadly interprets the phrase 'use or operation’ the determinative predicate in establishing liability therefrom would appear to be the designed purpose of the use or activity of the involved motor vehicle which is the proximate cause of the injury or damage sustained”* (see, also, Matter of Senia v Government Employees Ins. Co., 85 Misc 2d 762, 763 [use and operation of noncommercial vehicles includes loading and unloading which is "limited to the immediate act of placing the goods on the vehicle and lifting them off.”]; 11 NYCRR 65.1 [i] [6] ["use or operation of motor vehicle includes the loading or unloading of such vehicle”], and, 11 NYCRR 65.2 [mandating inclusion of such a clause containing this definition in no-fault insurance policies]).
These decisions, taken together, are dispositive of the issue. Plaintiff is not a "covered person” under article 18. She was injured in a parking lot approaching her parked car. The use and operation of her automobile was not the proximate cause of her injuries.
On the other hand, if plaintiff had been in the actual process of entering upon or alighting from her automobile, she would be considered a "covered person” (12 Couch, Insurance 2d, § 45:74), and it was because plaintiff had so described her claim for first-party benefits that Aetna paid her. Similarly, if she were in close proximity to the automobile and were conducting a function integral to its use and operation, such as standing next to a disabled vehicle or changing a tire, she would be a "covered person” (cf. Colon v Aetna Cas. & Sur. Co., NYLJ, June 21, 1977, p 12, col 4; see, also, Cocking v State Farm Mut. Auto. Ins. Co., 6 Cal App 3d 965). However, this is not the situation in the present case, either.
The anomaly which the plaintiff presents to the court is that, although she recovered first-party benefits because the manner of the happening of the accident, i.e., entering upon *662 the automobile, made her a "covered person”, she is no longer a "covered person” because with respect to her action against Webster Manor, she now claims that the accident happened while she was walking to her automobile and slipped on the ice and snow. Therefore, the plaintiff argues, Aetna may not assert a lien under subdivision 2 of section 673 of the Insurance Law against any recovery she gets from Webster Manor because that accident would not have entitled her to be paid first-party benefits.
However, reimbursement to Aetna is not limited to recovery under the statutory lien. Regardless of whether or not Aetna is technically entitled to the lien, there are other legal mechanisms available to it: estoppel is one.
Although Aetna has not in its answer specifically mentioned or pleaded estoppel as normally required (Davison v Klaess, 280 NY 252), plaintiff’s full knowledge of all matters obviates any possible surprise (CPLR 3018 subd [b]; cf. Rothschild v Title Guar. & Trust Co., 204 NY 458, 464). More importantly, Aetna’s counsel has argued the elements of estoppel in his papers, so the rule of interpreting pleadings liberally should be applied (CPLR 3026 and 2001; Corris v White, 29 AD2d 470, 472). Furthermore, this application of estoppel is only utilized to defeat a motion for summary judgment and not to provide a basis for recovery.
Aetna promptly paid its insured’s claim, relying upon her statements as to how she had sustained her injuries. A quick reading of her claim indicates plaintiff fell while she was actually entering her car. She states: "As I was attempting to enter my car I slipped on the ice and fell alongside my car.” As Aetna points out, it made prompt payment not only because this is the company’s policy but also because it has adequate protection to recover, where proper, moneys it pays out. This right of recovery is assured both by statutory lien (Insurance Law, § 673, subd 2) and, in certain instances, by statutory subrogation (Insurance Law, § 330, subd 8; § 333, subd 7; see, generally, 57 NY Jur, Subrogation, § 6).
The general rule is that once an individual accepts and retains benefits, that individual may not avoid the obligations that attach to such acceptance. (See Matter of Schaefer, 18 NY2d 314; Freedman & Slater v Great Lakes Forwarding Corp., 7 AD2d 978; Matter of Adelman v Applefield, 22 Misc 2d 95, 98; Ann., 44 ALR2d 196; Ann., 15 ALR2d 937; 1 Williston, Contracts [3d ed], §§ 139-140; see, also, 3 Black *663 stone’s Commentaries [Lewis ed], 308; 3 Coke, Littleton [Thomas ed], 341-342; Bigelow, Estoppel [6th ed], 3-7.) "A party cannot claim benefits under a transaction or instrument and at the same time repudiate its obligations.” (31 CJS, Estoppel, pp 559-560; see, also, Matter of Allstate Ins. Co. v Neithardt, 24 AD2d 941, 942.)
One may not, even innocently, mislead another and then attempt to claim the benefit of his deception. (Triple Cities Constr. Co. v Maryland Cas. Co., 4 NY2d 443, 448.)
The doctrine of estoppel has been applied in numerous instances involving issues of coverage under insurance policies. A reading of these cases indictates estoppel usually will lie when either the insured or the insurer is attempting to deny obligations contained in the policy when the other party has altered its position because of certain conduct or representations. (See, e.g., Triple Cities Constr. Co. v Maryland Cas. Co., supra; Pasmear Inn v General Acc. Fire & Life Assur. Corp., 44 AD2d 647; McMaster v President & Directors of Ins. Co. of North Amer., 55 NY 222; Ann., 15 ALR2d 955.)
This is the situation in the present case. It is novel solely because it involves estoppel under the new no-fault law in a situation where the insured claimed benefits and received
them, but now is attempting to defeat a lien by inconsistently denying coverage.
Statutory purpose also warrants the application of estoppel against plaintiff. The Governor, in his memorandum when the bill was signed, stated that the function of the law was to deliver better protection for the insured and to pay off claims quickly (NY Legis Ann, 1973, p 298). The summary of legislative debate makes clear that the purpose of the no-fault law was to insure the "swift reimbursement of accident victims * * * who had serious injuries”. (Report of Joint Legis. Committee on Insurance Rates, Regulations and Recodification of Insurance Law, supra, pp 9 and 10; see, also, Comment, 37 Albany L Rev 664, 671.) The regulations of the Commissioner of Insurance are consonant with the same purpose (11 NYCRR 65.6). Subdivision 1 of section 675 of the Insurance Law also requires insurance companies to pay claims within 30 days after submission of proof of the fact and amount. In sum, then, legislative purpose, as well as the equity or spirit of the statute requires that plaintiff be estopped from denying coverage under the act once she has claimed, received and accepted *664 benefits (see Dickerson, Interpretation and Application of Statutues, pp 95-96, 156-157, 213-214).
Plaintiffs motion for summary judgment is therefore denied.
Aetna’s cross motion to amend its answer and to bé permitted to counterclaim against plaintiff is granted (CPLR 3025, subd [b]), provided that Aetna serve its amended answer and counterclaim upon plaintiffs counsel within 20 days after entry and service of the order. Motions to amend pleadings are to be liberally granted (3 Weinstein-Korn-Miller, NY Civ Prac, par 3025.14), especially, in the present situation, where Aetna’s original answer was framed in response to plaintiffs initial complaint alleging that she slipped and fell while entering her car. Plaintiff has now changed her story and Aetna should be afforded the opportunity to frame a new response and set forth the legal theories applicable to the new set of facts.
Because plaintiff is estopped from denying coverage under the facts now asserted, Aetna may counterclaim under its statutory lien for any recovery obtained by the plaintiff to the extent of first-party benefits it paid.
Aetna’s counterclaim may also include the right to recover by subrogation.
In certain instances the right of subrogation is guaranteed by statute (see Insurance Law, § 330, subd 8; § 333, subd 7). However, "the general rule is that upon payment of loss the insurer is entitled to be subrogated pro tanto to any right of action which the insured may have against a third person whose negligence or wrongful act caused the loss” (31 NY Jur, Insurance, § 1620, p 510). In addition, "[t]he right of an insurer to be subrogated to the right of the insured may be either the right of conventional subrogation — that is, subrogation by agreement between the insurer and the insured — or the right of equitable subrogation, by operation of law, upon the payment of the loss” (31 NY Jur, Insurance, § 1620). These rules, of course, apply to automobile liability policies (see Matter of Munch Brewery v Grief, 256 App Div 1075; Ann., 19 ALR3d 1054).
Furthermore, Aetna does not stand in the position of a volunteer, but made the payments upon the misrepresentation of plaintiff (see 50 NY Jur, Restitution, § 48; 57 NY Jur., Subrogation, §§ 13, 15; see, also, State Farm Mut. Ins. Co. v *665 Doe, 82 Misc 2d 133 [subrogation will lie even when payment mistakenly made]).
The jurisprudential basis underlying subrogation as well as the following permissible counterclaims is that actions will lie for restitution of benefits received to prevent unjust enrichment (see, Restatement, Restitution, § 162; 50 NY Jur, Restitution, § 5). These rights become eveq stronger when the benefits were received because of one party’s misrepresentations (see 12 Williston, Contracts [3d ed], § 1525).
Thus, Aetna may also counterclaim to enforce an equitable lien for the amount it paid to plaintiff. An equitable lien arises "[w]here property of one person can by a proceeding in equity be reached by another as security for a claim.” (Restatement, Restitution, § 161; see, also, Matter of Interborough Cons. Corp., 288 F 334, cert den sub nom. Porges v Sheffield,, 262 US 752.) "It is not a right which may be the basis of a possessory action, but is merely a charge upon the property itself.” (See 35 NY Jur, Liens, § 12.) Furthermore, it can arise expressly by contract or implication based upon the dealings and relations of the parties (see 35 NY Jur, Liens, § 15).
In addition, it would seem that Aetna may counterclaim to establish and enforce a constructive trust. Such a trust arises "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched.” (Restatement, Restitution, § 160; see, also, Beatty v Guggenheim Exploration Co., 225 NY 380, 386; 61 NY Jur, Trusts, §§ 140, 143.) Constructive trusts may be established for choses in action as well as for real and personal property (see Sharp v Kosmalski, 40 NY2d 119; Loucks v Standard Oil Co., 224 NY 99, 110; 61 NY Jur, Trusts, § 66; see, also, 47 NY Jur, Property, § 5).
As conditions precedent to establishing a constructive trust, there are four requirements: (1) a confidential or fiduciary relation; (2) a promise; (3) a transfer thereon; and (4) unjust enrichment. (Sharp v Kosmalski, supra, p 121.)
"A fiduciary relationship may exist or come into being whenever trust and confidence are reposed by one person in the integrity and fidelity of another, or where one person reposes special confidence in another, or where a special duty exists on the part of one person to protect the interests of another, or when there is a reposing of faith, confidence, and trust, and the placing of reliance by one person on the judgment and advice of another.” (36A CJS, Fiduciary, p 385; *666 see, also, Penato v George, 52 AD2d 939, 942.) Furthermore, "[i]t is in each case a question of fact” (36A CJS, Fiduciary, p 387.) In the present case all four requirements are met.
By the parties entering into the insurance contract, they agreed to abide by its terms as well as by article 18 of the Insurance Law and the commissioner’s regulations (11 NYCRR 65.6 [a]). In essence, then, a sufficient promise exists for purposes of establishing a constructive trust "from the very transaction itself.” (See Sharp v Kosmalski, 40 NY2d 119, 122, supra.)
In the present case, plaintiff made certain representations in submitting her claim and in reliance on her statements Aetna transferred money which, if retained, would result in the unjust enrichment of plaintiff. Because this court has already dwelt at length on the unjust enrichment aspect of the case, no more need be said at this point. Thus, a counterclaim to establish and enforce a constructive trust would also be proper.

 The extant legislative history on article 18 does not contain any reference to the phrase "use or operation”. (See Report of Joint Legis. Committee on Ins. Rates, Regulation and Recodification of Insurance Law, NY Legis Doc, 1973, No. 18, pp 5-14; see, also, Montgomery v Daniels, 38 NY2d 41, 49-52 [summary of legislative history].) Thus, decisional law developed in interpreting insurance policy clauses containing similar phrases would appear to be carried over for purposes of interpreting the statutory language at issue. (See Couch, Insurance 2d, §§ 45:47-45:52, 45:64 and 45:68-45:80 [citing examples and authorities]; see, also, 30 NY Jur, Insurance, §§ 1221-1223.)