*802 OPINION OF THE COURT
Augustus C. Agate, J.
In the above actions, plaintiff brought suit against defendant insurance company to recover compensation for medical services rendered to defendant’s insureds. These matters were consolidated for the purpose of trial, and a bench trial was held on January 31, 2003. Prior to presenting evidence, the parties stipulated to the validity of plaintiffs notice of claim and defendant’s timely denial. Further, the parties stipulated to the credentials of each expert and to the accuracy of each medical bill, leaving only the issue of medical necessity to be determined by the court.
In the first matter, plaintiff presented evidence through its expert Dr. Mgrdechian, a licensed chiropractor working for plaintiff. Dr. Mgrdechian examined plaintiffs assignor, who complained of numbness in her hands and arms. Dr. Mgrdechian treated plaintiffs assignor approximately 88 times during the period from June 4, 1999 through March 20, 2000. Plaintiff submitted bills to defendant for the above treatment and received payment until October 21, 1999, when defendant denied plaintiffs bills.
Defendant’s expert Dr. Bernstein testified that he examined plaintiffs assignor on three occasions. On June 18, 1999, Dr. Bernstein examined plaintiffs assignor and recommended further treatment. On August 2, 1999, Dr. Bernstein examined her again and found some improvement, but continued to recommend further treatment. On September 20, 1999, Dr. Bernstein examined plaintiffs assignor for a third time, and found that she had reached the maximum medical improvement. As Dr. Bernstein found any further treatment would be medically unnecessary, defendant denied plaintiffs subsequent bills.
In the second matter, Dr. Mgrdechian testified that he examined plaintiffs assignor, who suffered from radiculopathy and numbness. He treated plaintiffs assignor approximately 90 times during the period from February 15, 1999 through March 22, 2000.[1] Plaintiff submitted bills to defendant for the above treatment, and received payment until October 5, 1999, when defendant denied plaintiffs bills.
Dr. Bernstein testified that he examined plaintiffs assignor twice. On April 21, 1999, he recommended further treatment, but upon reexamining plaintiffs assignor in September 1999, *803 he found plaintiffs assignor had reached maximum medical improvement. As Dr. Bernstein found any further treatment would be medically unnecessary, defendant denied plaintiffs subsequent bills.
In the third matter, Dr. Mgrdechian testified that he examined plaintiffs assignor, who suffered from lumbar radiculopathy, lordosis and a slightly decreased range of motion. He treated plaintiffs assignor approximately 100 times during the period from March 26, 1999 through September 15, 2000. Plaintiff submitted bills to defendant for the above treatment, and received payment until January 20, 2000, when defendant denied plaintiffs bills.
Defendant’s expert Dr. Pierce testified that he examined plaintiffs assignor on two occasions. On August 17, 1999, defendant examined plaintiffs assignor and found that further treatment was permissible. On January 4, 2000, defendant found that plaintiffs assignor had reached normal limits of range of motion, and reached maximum medical improvement. As Dr. Pierce found any further treatment would be medically unnecessary, defendant denied payment of plaintiffs subsequent bills.
The sole issue to be determined by this court involves medical necessity. However, prior to rendering a decision, this court must determine what are medically necessary services and who has the burden to prove the medical necessity or lack thereof for the services rendered. This is not a simple task, as the appellate courts in this state have not definitively ruled on this issue. Further, prior to the jury trial presided over by this court in the matter of Neurological Servs., P.C. v Travelers Ins. (Index No. 51259/1998), no court in this state had instructed a jury as to the definition of or the burden of proof regarding medical necessity. However, as in the jury trial, the circumstances of this matter require this court to make that determination.
It is the holding of this court that the defendant has the burden to prove that the services rendered were not medically necessary. To clarify, this court finds that a plaintiff sustains its burden of proof by presenting a timely and proper notice of claim, for which there has been no payment or proper denial. A timely and proper notice of claim includes evidence that an insured assignor was treated for injuries sustained as a result of an automobile accident, and includes bills for treatment rendered by plaintiff with regard to those injuries. Plaintiff does not have to prove the medical necessity of its treatment. *804 If plaintiff meets its burden, defendant must then prove that the treatment was not medically necessary. Should defendant meet that burden, plaintiff may present evidence to rebut defendant’s evidence on that issue. While this may be contrary to prior holdings in arbitration, those decisions are not binding on this court and, in this court’s opinion, are contrary to the intention of the insurance regulations and existing case law. (See Hobby v CNA Ins. Co., 267 AD2d 1084,1085 [4th Dept 1999], citing McKinney’s Cons Laws of NY, Book 1, Statutes § 72.)
A review of the history behind the No-Fault Law clearly demonstrates a preference for expedient review of claims with an eye towards benefiting the insured. Upon signing the bill enacting the no-fault statute, the Governor’s Memorandum in Support indicated that the function of the law was to “deliver better protection for the insured and to pay off claims quickly.” (See 1973 NY Legis Ann, at 298; see also Pavone v Aetna Cas. & Sur. Co., 91 Misc 2d 658 [Sup Ct, Monroe County 1977].)
New York courts have also interpreted the regulations in favor of the insured’s rights and especially towards speedy payment of proper claims on behalf of the insured. (See Presbyterian Hosp. v Maryland Cas. Co., 90 NY2d 274, 284 [1997].) “A review of the purposes of the no fault law supports th[e] interpretation [that] the Legislature intended to permit liberal recovery of moneys actually expended in the treatment of accident-related injuries.” (Vidra v Shoman, 59 AD2d 714, 716 [2d Dept 1977]; Presbyterian Hosp. v Aetna Cas. & Sur. Co., 233 AD2d 431, 432 [2d Dept 1996].) The Court of Appeals found that “the regulations are written to encourage prompt payment of claims, to discourage investigation by insurers and to penalize delays.” (Dermatossian v New York City Tr. Auth., 67 NY2d 219 [1986]; Zydyk v New York City Tr. Auth., 151 AD2d 745 [2d Dept 1989].)
Defendant argues that medical necessity is an element that must be proven by plaintiff in its proof of claim. However, this argument is not supported by the insurance regulations or case law. In insurance contracts generally, the insurance carrier has the burden of showing that a claim comes within an exclusion of the policy. (Holman v Transameriea Ins. Co., 81 NY2d 1026 [1993]; Neuwirth v Blue Cross & Blue Shield of Greater N.Y., 62 NY2d 718 [1984]; Oceanside Med. Healthcare v Progressive Ins., 2002 NY Slip Op 50188 [U] [Civ Ct, Kings County 2001].) In these contracts, exclusion clauses are always strictly construed against the insurer. (See Cone v Nationwide Mut. Fire Ins. Co., 75 NY2d 747 [1989].)
*805 A plain reading of the insurance regulations also indicates that medical necessity is not a required part of plaintiffs proof of claim. In defining what is needed for plaintiffs proof of claim, the regulations only require that it include “full particulars of the nature and extent of the injuries and treatment received and contemplated.” (11 NYCRR 65-1.1.) It does not indicate that plaintiff must submit evidence of the necessity of the services in its claim or that plaintiff has the burden to prove the necessity of the services at trial. This cannot be seen as an oversight, as the regulations have been reviewed and amended many times since their inception, and at no time has the Department of Insurance or the Legislature mandated medical necessity as a requirement for plaintiffs proof of claim.
Further, recent court decisions have found that plaintiffs complied with statutory requirements upon serving a proper notice of claim, without requiring evidence of medical necessity. In Park Health Ctr. v Prudential Prop. & Cas. Ins. Co. (2001 NY Slip Op 40650 [U] [App Term, 2d & 11th Jud Dists 2001]), the court found that plaintiffs prima facie case was satisfied by providing a proper proof of claim, without necessarily presenting evidence of medical necessity. Further, in Oceanside Med. Healthcare v Progressive Ins. (2002 NY Slip Op 50188 [U] [Civ Ct, Kangs County 2002]), the court held that once plaintiff presents a proper notice of claim, defendant has the burden of presenting medical evidence that the services were not medically necessary. Therefore, as there is no authority in the regulations or case law to put the onus on plaintiff to prove medical necessity, it is held that medical necessity is not an element of plaintiffs proof of claim.
Rather, the law is clear that medical necessity is a defense that defendant must present in a timely denial. The seminal cases in this area, Presbyterian Hosp. v Maryland Cas. Co. (90 NY2d 274 [1997]) and Central Gen. Hosp. v Chubb Group of Ins. Cos. (90 NY2d 195 [1997]), clearly hold that medical necessity is a noncoverage issue that must be included in a timely denial or is waived. In Presbyterian and Central Gen., the Court of Appeals found that medical necessity must be specifically presented as a defense in the notice of denial or it is waived. In distinguishing between noncoverage and coverage issues, the Court found that medical necessity did not rise to the level of a coverage issue that can be presented without a timely failure to disclaim. (See id.)
Since these groundbreaking decisions, lower courts have continued to consider medical necessity as a defense asserted *806 by defendants. (See Vinings Spinal Diagnostic v Liberty Mut. Ins. Co., 186 Misc 2d 287 [Nassau Dist Ct 2000].) It is analogous to other defenses, such as fraud or misrepresentation, which must be proven by the party asserting the defense. (See CPLR 3016.) In these cases, plaintiff has no burden to demonstrate that there was no fraud or misrepresentation in its direct case, but may present evidence to rebut defendant’s assertions. As the courts have interpreted the issue of medical necessity to be a defense to plaintiff’s claim, one must conclude that medical necessity is an affirmative defense similar to other affirmative defenses that must be pleaded and proven at trial.
So, if plaintiff does not have to present medical necessity in its proof of claim, and defendant must present medical necessity as a defense in a timely denial, it is only logical to conclude that defendant has the burden of proving medical necessity. It is unreasonable to allow defendants to argue that the treatment was not medically necessary, while putting the onus on plaintiff to show it was medically necessary. (See Mount Sinai Hosp. v Triboro Coach, 263 AD2d 11, 21 [2d Dept 1999] [“The judiciary cannot allow itself to be in the position of having to decide such difficult issues without the benefit of any evidence, but solely on the basis of a defendant’s speculation or wishful thinking”].) Defendant’s argument is inconsistent with the logical progression of the law in this area, as well as violates the spirit and intention of the no-fault statute.
It is now incumbent upon this court to determine what defendant would have to prove to show the medical services were unnecessary. To do this, there must be a definition of medical necessity for courts to use in evaluating the evidence presented to make a legal determination. As of yet, neither the Legislature nor the courts have defined the term “medical necessity.” During the 2001-2002 Session, the New York Assembly passed a bill that defines what is “medical necessity” on March 17, 2002, and this bill is presently before the Senate. (See 2001-2002 NY Senate-Assembly Bill S 2744a, A 5048a; see also Monica Miller, The Debate over Medical Necessity in Case Law and Government! Industry Forums, on behalf of the Foundation for the Advancement of Innovative Medicine <www.healthlobby.com/billrpt.htm> [accessed Sept. 26, 2003].) Other than this court’s own jury instruction created for the jury in Neurological Servs., P.C. v Travelers Ins. (supra), this court is unaware of any other court that has defined medical necessity. (See Oceanside Med. Healthcare, 2002 NY Slip Op 50188[U].)
*807 If the bill is enacted into law, this will greatly assist the courts in evaluating the no-fault cases where medical necessity is an issue, and this court relies heavily on the legislative language and intent in formulating its definition. While this court would prefer to receive a definition of the term from the Legislature or the Court of Appeals, it is incumbent upon this court to provide a guideline as to how it evaluated the evidence presented in this matter. It would seem illogical to decide the issue of medical necessity in this matter without allowing the parties to understand the road the court took in making its determination.
A review of Black’s Law Dictionary and Webster’s Collegiate Dictionary further developed this court’s definition of medical necessity. According to the dictionaries, the term “necessity” indicates a variety of meanings, ranging from useful or helpful to required or compulsory. (Black’s Law Dictionary 1053 [7th ed 1999]; Webster’s Collegiate Dictionary, Merriam-Webster [10th ed 1998].) This court reviewed the legislative bill and the dictionary definition of the term, and arrived at the following definition of medical necessity: “treatment or services which are appropriate, suitable, proper and conducive to the end sought by the professional health service in consultation with the patient. It means more than merely convenient or useful treatment or services, but treatment or services that are reasonable in light of the patient’s injury, subjective and objective evidence of the patient’s complaints of pain, and the goals of evaluating and treating the patient.” (See id.; see also legislative bills, supra; James Bare, Making Sense of Health Plan Denials, Family Practice Management [June 2001], < www.aafp.org/fpm/20010600/39maki.html >.)
In determining whether services were medically necessary, this court used the following analysis from the above sources in making its determination: “for treatment or services to be medically necessary, it must be reasonably determined by the health care professional in consultation with the patient, that the treatment or services are consistent with the patient’s condition, circumstances and best interest of the patient with regard to the type of treatment or services rendered, the amount of treatment or services rendered, and the duration of the treatment or services rendered. To find treatment or services are not medically necessary, it must be reasonably shown by medical evidence, in consideration of the patient’s condition, circumstances, and best interest of the patient, that the treatment or services would be ineffective or that the insurer’s *808 preferred health care treatment or lack of treatment would lead to an equally good outcome.” (See id.)
It is with the above analysis that this court undertook an evaluation of the case at hand. As the parties concede plaintiffs timely and proper notice of claim, the issue becomes whether defendant proved the services were not medically necessary. In all of the above matters, defendant met its burden of proof that the services provided to plaintiffs assignors were not medically necessary. Defendant’s evidence was more than a peer review.[2] Rather, defendant presented the expert who actually examined each plaintiffs assignor and also reviewed plaintiffs medical records. Defendant’s expert also examined each assignor multiple times, rather than on only one occasion. Further, each expert initially recommended further treatment before ultimately concluding that the assignors had reached maximal medical improvement. Based on the above, defendant sufficiently demonstrated that the services were not medically necessary.
Plaintiff failed to sufficiently rebut defendant’s medical evidence and demonstrate the medical necessity of its claims. Plaintiff treated each assignor for injuries which were not substantiated by any objective medical evidence. Further, plaintiff continued to treat the assignors, even after receiving defendant’s denial, for periods of time that might be considered excessive in light of the nature of the injuries.
As defendant sufficiently demonstrated the lack of medical necessity of plaintiffs services, which plaintiff failed to adequately rebut, plaintiff may not recover for the services in question.
Therefore, judgment is granted to defendant, and plaintiffs complaint is dismissed.

. In this matter, only 14 of the visits were disputed by the parties.

. It may be necessary for another court, under another set of facts, to determine whether a peer review alone is sufficient for defendant to meet its burden of proof of lack of medical necessity.