OPINION OF THE COURT
Debra Silber, J.
After trial before me on May 14, 2003, both sides represented by counsel, judgment is awarded to the plaintiff in the sum of $1,573.24, plus interest from July 10, 2002 and attorneys’ fees as provided by the Insurance Regulations,[1] together with the statutory costs and disbursements of this action.
The plaintiff seeks payment with regard to first-party claims for no-fault benefits for plaintiff’s assignor with regard to EMC/ NCV tests that plaintiff provided. The claims were submitted to defendant insurance company, and were denied on the grounds of a medical peer review that there was no medical ne *269 cessity for the tests. The parties stipulated that the only issue for determination by the court was the issue of the medical necessity for the tests, and thus whether or not defendant properly denied payment of the claims.
Both sides presented the testimony of a physician. Plaintiff had the treating doctor testify and defendant had the peer review doctor testify. Plaintiffs doctor testified that the tests were medically necessary as part of his diagnosis and treatment of the plaintiff. The films showed four lumbar disc bulges, two cervical disc bulges and two cervical disc herniations. He stated that he wanted to determine whether the plaintiff had a radiculopathy. He testified that after obtaining positive findings on the tests with regard to the upper extremities, he modified the patient’s physical therapy regime. Defendant’s doctor testified that the tests were not necessary, as there were MRIs done, a course of physical therapy commenced, and that the doctor’s notes taken in connection with his exam on the date he ordered the tests were “incomplete and questionable.”[2] He testified that since the same conservative course of treatment was followed after taking the tests, the tests were not necessary. Defendant’s doctor did not review the report of the orthopedist whom plaintiffs doctor referred him to. He only reviewed some of his medical records. He testified that he “would have liked a better description of the muscle testing done to support the referral for tests.” He might have received it if he had been given the patient’s entire file. The testimony of defendant’s doctor is not sufficient to meet the defendant’s burden of proof with regard to the affirmative defense of lack of medical necessity. (See Choicenet Chiropractic P.C. v Allstate Ins. Co., 2003 NY Slip Op 50672[U] [App Term, 2d Dept].)
The court finds the limited issue which the court was asked to decide is not presently an issue with any precedent, indeed any legal definition. As Judge Agate explains in Fifth Ave. Pain Control Ctr. v Allstate Ins. Co. (196 Misc 2d 801, 805-806 [Civ Ct, Queens County 2003]):
“[T]he law is clear that medical necessity is a defense that defendant must present in a timely denial * * *
“It is now incumbent upon this court to determine what defendant would have to prove to show the medical services were unnecessary. To do this, *270 there must be a definition of medical necessity for courts to use in evaluating the evidence presented to make a legal determination. As of yet, neither the Legislature nor the courts have defined the term ‘medical necessity.’ During the 2001-2002 Session, the New York Assembly passed a bill that defines what is ‘medical necessity’ on March 17, 2002, and this bill is presently before the Senate. (See 2001-2002 NY Senate-Assembly Bill S 2744a, A 5048a; see also Monica Miller, The Debate over Medical Necessity in Case Law and Government / Industry Forums, on behalf of the Foundation for the Advancement of Innovative Medicine <www.healthlobby.com/billrpt.htm> [accessed Sept. 26, 2003].) Other than this court’s own jury instruction created for the jury in Neurological Servs., P.C. v. Travelers Ins. (supra), this court is unaware of any other court that has defined medical necessity. (See Oceanside Med. Healthcare, 2002 NY Slip Op 50188 [U].)”[3]
In the Fifth Ave. case (supra), the issue was the necessity of continued therapy treatment, and the defendant’s doctor testified that he had examined the plaintiff several times, and concluded that the plaintiff had reached “maximum medical improvement.” The judge formulated his own definition of medical necessity in light of the absence of any law on the issue, and concluded that continued treatment was not medically necessary. He opines that “[i]t may be necessary for another court, under another set of facts, to determine whether a peer review alone is sufficient for defendant to meet its burden of proof of lack of medical necessity” (at 808 n 2). This court, faced squarely with the issue, decides that it is not when the medical bill is for a diagnostic test. It is not for a judge to second-guess a doctor who decides that a medical test is necessary for his diagnosis and treatment when the only support for the denial is a peer review performed by a doctor who did not examine the patient. Thus, while it may be possible to make out a prima facie case for the affirmative defense of lack of medical necessity for services or treatment with a file-based peer review, it is not possible to do so with regard to a test performed within a reasonable time following an accident and prior to the patient even arguably reaching maximum medical *271 improvement. If the governing regulations, for example, stated that EMG/NCV tests will not be paid for if MRIs have already been performed unless the MRIs demonstrated certain findings, then the court would be able to say that in the absence of such a finding, payment is not permitted. But what findings on the film would warrant nerve testing would need to be in the law and/or regulations, presumably based upon sound medical opinion, whereas on the facts of this case, the court cannot apply hindsight and conclude that the plaintiffs doctor was wrong to prescribe the test because the findings on the test did not result in a material change in the course of treatment.
Thus, while the Appellate Term has indicated that “file-based peer review” can raise a triable issue of fact such that plaintiff would not be entitled to summary judgment,[4] there is no case that states that file-based peer review is sufficient to meet defendant’s burden at trial with regard to a diagnostic test, after testimony by plaintiffs treating doctor that the test was necessary for his diagnosis and treatment.

. 11 NYCRR 65.17 (b) (6) (v).

. His peer review report was not provided to the court, and thus it is not possible to determine whether defendant reasonably relied upon it in issuing its denial of benefits.

. The bill was not introduced in the current legislative session (2002-2003).

. Park Health Ctr. Rockaway Blvd. Med P.C. v State Wide Ins. Co., 2003 NY Slip Op 50921(U) (2d Dept 2003); see also Rockaway Blvd. Med. P.C. v. Travelers Prop. Cas. Corp., 2003 NY Slip Op 50842(D) (2003) (referring to 11 NYCRR 65-3.8 [b] [4]).