*580 OPINION OF THE COURT
Judith R. McMahon, J.
The genesis of this first-party benefits action is a motor vehicle accident that occurred on March 8, 2003. The plaintiffs assignor, Augusto Espinoza, was involved in this vehicular accident and as a result of his alleged injuries, sought medical treatment from Dr. Lev. Thereafter, Dr. Lev referred Mr. Espinoza to plaintiff, Dr. Hollander, for diagnostic testing, including a paraspinal ultrasound of the cervical paraspinal region, the thoracic paraspinal region, lumbar paraspinal region, and the trapezius muscles bilaterally. Dr. Hollander performed the requested diagnostic modalities on March 26, 2003 and sent a timely bill to Mr. Espinoza’s insurer, the defendant, pursuant to the No-Fault Insurance Law. (See, 11 NYCRR 65-3.11.) At the time of the testing, Mr. Espinoza signed a standard assignment of benefits form and a signature stamp containing Dr. Hollander's name was affixed to the form.
After receipt of Dr. Hollander's bill, State Farm Insurance Company issued a timely denial (NF-10). As a result of the denial, plaintiff instituted an action for payment of first-party benefits pursuant to the No-Fault Insurance Law. In its answer, State Farm alleged, inter alia, lack of standing on behalf of the plaintiff and lack of medical necessity of the diagnostic testing performed on March 26, 2003. After a filing of the notice of trial, a nonjury trial was held in this matter on September 20, 2004.
At the time of trial, plaintiff established a prima facie case by submitting into evidence the statutory forms of proof of claim, the amount of the claim and the defendant’s denial form (NF-10) which indicated proof of service upon defendant in a timely fashion. (See Park Health Ctr. v Prudential Prop. & Cas. Ins. Co., 2001 NY Slip Op 40650[U] [2001].)
During the trial, plaintiff attempted to place the assignment of benefits into evidence. Defendant objected based upon the lack of authentication of the assignor’s signature. The burden of proving an affirmative defense of lack of standing should be on the defendant. In the case at bar, State Farm did not come forward with any evidence to challenge the effectiveness of the assignor’s signature. Merely, upon voir dire of Dr. Hollander, the defendant elicited that the procedure in the office of the plaintiff is that the assignment of benefits form is signed by the patient outside the presence of the doctor. The doctor’s signature stamp is then placed on the form. Further, the plaintiff testified that it *581 was the customary procedure in his office that the technician or the technician’s office personnel be present at the time the assignor signs the assignment of benefits form. Therefore, following the holding in Elm Med., P.C. v American Home Assur. Co. (2003 NY Slip Op 51357[U] [2003]) and even assuming, arguendo, that the plaintiff must proffer a proper assignment of benefits, the testimony as to the custom and procedure of this physician’s office established the propriety of the assignment of benefits.
A signature without authentication adequately explained by the physician as being obtained in the ordinary and customary procedure in the office should be sufficient to defeat the claim of lack of standing. The authenticity of the signature, therefore, may be reasonably inferred since the patient signed the assignment of benefits form as part of the usual and customary procedure as detailed by the physician’s testimony and underwent the testing as described in the billing records. “Circumstantial evidence may satisfy the requirement that a writing be authenticated before it may be introduced.” (Elm Med., P.C. v American Home Assur. Co., 2003 NY Slip Op 51357[U], *7; see, Anzalone v State Farm Mut. Ins. Co., 92 AD2d 238 [1983].)
Defendant’s second argument that the testing performed by plaintiff was medically unnecessary is novel since the claim is, not that the test was unnecessary for the complaints and symptomatology presented by the assignor, but, that the particular tests performed by plaintiff are without any clinical benefit in most instances. Specifically, defendant’s denial form (NF-10) states the following:
“According to the American College of Radiology, the American Institute of Ultrasound and Medicine and the American Chiropractic College of Radiology, the use of spinal ultrasound currently has no proven clinical utility as a screening diagnostic or adjunctive imaging tool for the evaluation of pain, fluid in the tissues, nerve disorders, or subtle abnormalities adjacent to the spine. Therefore, this procedure is denied. The named insured is not responsible for payment.”
At the trial, defendant called Dr. William Ross, an internist and gastroenterologist. Dr. Ross, in brief, testified on direct examination that based upon the opinion statement by the American College of Radiology in 1996 that spinal ultrasound has no *582 clinical utility, he found the testing performed by plaintiff to be unnecessary. Upon cross-examination, Dr. Ross’ opinion became, at best, equivocal as is revealed in the following portions of testimony:
“Q. Doctor, do you agree or disagree with the following statement contained on page 573 of the 2003 Practice Guidelines, etcetera, which reads: ‘These guidelines are an educational tool designed to assist practitioners in providing appropriate radiologic care for patients,’ do you agree or disagree with that, doctor?
“A. I don’t see why I wouldn’t agree with that.
“Q. Do you agree or disagree with the statement on the same page that goes on to say, ‘they are not inflexible rules or requirements of practice and are not intended, nor should they be used, to establish a legal standard of care,’ do you agree or disagree with that from this book?
“A. Sounds very reasonable” (at 33, lines 1-15).
Dr. Hollander had testified that the tests he performed would, in his opinion, assist the referring physician in making a diagnosis and in formulating a treatment plan.
In the case at bar, plaintiff established a prima facie case by submitting the statutory forms of proof of claim and the amount of the loss. (See Liberty Queens Med,., PC. v Liberty Mut. Ins. Co., 2002 NY Slip Op 40420[U] [App Term, 2d & 11th Jud Dists 2002].) Once plaintiff has established his case, the burden of proof shifts to the defendant on the claim of lack of medical necessity stated in defendant’s affirmative defense. In determining whether services are medically necessary the following analysis has been utilized:
“[F]or treatment or services to be medically necessary, it must be reasonably determined by the health care professional in consultation with the patient, that the treatment or services are consistent with the patient’s condition, circumstances and best interest of the patient with regard to the type of treatment or services rendered, the amount of treatment or services rendered, and the duration of the treatment or services rendered. To find treatment or services are not medically necessary, it must be reasonably shown by medical evidence, in consideration of the patient’s condition, circumstances, and best interest of the patient, that the treatment or *583 services would be ineffective or that the insurer’s preferred health care treatment or lack of treatment would lead to an equally good outcome.” (Fifth Ave. Pain Control Ctr. v Allstate Ins. Co., 196 Misc 2d 801, 807-808 [2003].)
Applying the aforementioned standard to the case at bar it becomes clear that defendant’s expert’s testimony is equivocal and does not meet the burden of proof necessary to establish that the testing done by plaintiff was not medically necessary. In the instant matter, we have here, not a specific symptom, not a specific disease, not a specific complaint that was addressed in a medically ineffective way, according to defendant; rather, according to defendant’s denial form (NF-10) the defendants have a blanket claim that the ultrasound of the paraspinal area is ineffective, regardless of complaint or symptomatology. This court is not willing to find a diagnostic tool utilized by physicians to be ineffective in all forms of complaints concerning the spine based on teetering testimony by defendant’s expert and guidelines instituted by the American College of Radiology which clearly establish that doctors are to use their own judgment in ordering different tests and that their conclusions are not binding upon any medical personnel. Furthermore, we have testimony by the physician, Dr. Hellander, stating that his test would be useful to the referring physician to form a proper prognosis and diagnosis of the patient.
Moreover, in reviewing the standard concerning medical necessity, it is quite clear that this is to be viewed on a patient-by-patient basis and that testing, whether medically necessary or not, should be based upon the symptomatology and complaints and disease entities of the patient/assignor involved.
This does not mean, of course, that this court would not find that a paraspinal ultrasound would not be medically necessary to a particular patient; however, it is not a court’s function based upon the testimony presented in this matter to rule a diagnostic modality ineffective for all spinal treatments when the College of Radiology is perplexed about the effectiveness or ineffectiveness of such. A broad stroke of the brush in such an instance would not be beneficial to the medical profession and, in particular, to the patients they treat. Accordingly, judgment is rendered for the plaintiff in the amount of $1,894.42.