OPINION OF THE COURT
Judith R. McMahon, J.
*424 In this action, plaintiff is seeking first-party no-fault medical reimbursement payments from the insurer GEICO for diagnostic tests performed pursuant to the request of the treating physician.
On January 10, 2002 Janette Lamb-McCleod was involved in a motor vehicle accident and allegedly sustained injuries. She sought the care and treatment of Dr. Harry Montazem. Dr. Montazem initially examined Ms. Lamb-McCleod on January 14, 2002 and referred her to undergo plane x rays of the cervical spine, lumbar spine and right shoulder due to pain and symptomology she exhibited during the physical examination.
Subsequently, Dr. Montazem referred Ms. Janette Lamb-Mc-Cleod to plaintiffs diagnostic establishment in order for Ms. Lamb-McCleod to undergo MRIs (Magnetic Resonance Imaging) of the brain, cervical spine and lumbar spine. Thereafter, plaintiff assigned her rights to no-fault payments to West Tremont Medical Diagnostics which forwarded a bill to defendant insurer based upon the testings it performed at the request of the examining physician, Dr. Montazem. Ultimately, plaintiffs request for payment was timely denied by GEICO. Plaintiff then instituted the case at bar seeking payment of first-party benefits pursuant to the No-Fault Insurance Law in the amount of $2,666.17, plus statutory interest and attorneys’ fees pursuant to 11 NYCRR 65.17 (b) (6) (v).
Joinder of issue occurred at the filing of an answer on or about April 21, 2003. (CCA 402.) Defendant raised an affirmative defense of lack of medical necessity of the tests performed by plaintiff, more specifically, that the MRIs of the brain, lumbar spine and cervical spine were not medically necessary. The trial convened on January 25, 2005 and plaintiff proved its prima facie case by submitting completed claims to defendant which defendant did not pay and which defendant denied within 30 days. (See Insurance Law § 5106 [a]; Amaze Med. Supply Inc. v Eagle Ins. Co., 2 Misc 3d 128[A], 2003 NY Slip Op 51701[U] [App Term, 2d & 11th Jud Dists].)
By submitting the mandatory statutory forms requesting payments, plaintiff has proved its prima facie case and therefore has met its burden of proof. (See Ocean Diagnostic Imaging P.C. v GEICO Ins., 3 Misc 3d 137[A], 2004 NY Slip Op 50511[U].) The burden of proof now shifts to the defendant to prove its affirmative defense of lack of medical necessity. (Liberty Queens *425 Med., P.C. v Liberty Mut. Ins. Co., 2002 NY Slip Op 40420[U] [2002].)*
Defendant produced an expert witness, Dr. Elizabeth McDonald who testified very succinctly as to the lack of medical necessity of the three MRIs performed by plaintiffs diagnostic center. In essence, Dr. McDonald testified that a review of the examination performed by Dr. Montazem noted that Ms. LambMcCleod had suffered no loss of consciousness, had no abrasions and that the central nervous system examination was normal. Dr. McDonald further testified that Dr. Montazem did not perform a complete neurological examination since pupillary size and reaction and motor strength testing, sensory testing and deep tendon reflexes were not noted upon examination by Dr. Montazem. Based upon her review of Dr. Montazem’s examinations and testing results, Dr. McDonald stated unequivocally in her opinion that the MRIs were performed unnecessarily.
Upon cross-examination, Dr. McDonald, significantly, testified as to the customary medical procedures in referring patients to laboratories or diagnostic centers. Clearly, defendant’s expert testified that the examining physician, upon suspecting some underlying medical difficulty, would either telephonically contact the diagnostic center and/or write a prescription for the patient to appear at the diagnostic center for testing to be performed. Moreover, Dr. McDonald stated that, in her experience as a physician, a diagnostic center had never questioned the medical validity of a test that had been referred to it. The only questioning she had ever received from such an establishment was the personnel at the testing center inquiring as to what exactly the referring physician was seeking in ordering the test. In essence, Dr. McDonald testified that the usual and customary procedure in referring a patient to a diagnostic center would not involve the diagnostic center in the decision-making process of whether such a test was necessary for that patient.
A review of the legislative history of the No-Fault Law clearly demonstrates an attempt at streamlining the fair payments to automobile accident victims and their assignees. This is clearly evident by the plain wording of the statute. 11 NYCRR 65-3.2 states the following:
*426 “Section 65-3.2 Claim practice principles to be followed by all insurers.
“(a) Have as your basic goal the prompt and fair payment to all automobile accident victims.
“(b) Assist the applicant in the processing of a claim. Do not treat the applicant as an adversary.”
“Upon signing the bill enacting the No-Fault statute, the Governor’s memorandum in support indicated that the function of the law was to deliver better protection for the insured and to pay off claims quickly.” (Fifth Ave. Pain Control Ctr. v Allstate Ins. Co., 196 Misc 2d 801, 804 [2003]; see 1973 NY Legis Ann, at 298.)
While under the facts presented in this case this court is only called upon to decide whether defendant GEICO has met its burden of proving lack of medical necessity as to the tests performed upon Janette Lamb-McCleod, it is clear that a larger issue looms, i.e., can a diagnostic center that merely performs MRIs and who does not perform a physical examination upon the patient-assignor be denied first-party benefits by the insurer who asserts an affirmative defense of lack of medical necessity?
Medical necessity has been defined by the courts to be treatment that is reasonably determined by the health care professional in consultation with the patient, that the treatment or services are consistent with the patient’s condition, circumstances and best interest of the patient in regard to the type of treatment or services rendered. To find treatment or services are not medically necessary it must be reasonably shown by medical evidence, in consideration of the patient’s condition, circumstances and best interests of the patient that the treatment or services would be ineffective or that the insurer’s preferred health care treatment or lack of treatment would lead to an equally good outcome. (Fifth Ave. Pain Control Ctr. v Allstate Ins. Co., 196 Misc 2d 801 [2003].) The definition clearly involves a determination by a physician who has spoken to the patient and examined the patient. Implicit in this definition is a customary medical procedure that physicians have performed in determining what treatment is best for the particular patient that has come under their care and treatment. It is obvious that a diagnostic center is not in the position, in the ordinary and usual course of medical procedure, to consult with the patient about the patient’s complaints and symptomology and does not perform a physical examination upon the patient. The diagnostic center is there to perform tests solely. Patients go there on a referral basis from their treating, examining doctor.
*427 Under the circumstances, the facts and expert testimony of the case at bar, it is clear that defendant has failed to meet its burden of proof since its own expert testified that the diagnostic center is not the entity that determines what test is necessary for the patient to undergo. The very basis of the affirmative defense of lack of medical necessity involves an integral medical decision based upon a physical examination and conversation with the patient as to what therapy, testings and services would best be suited for that patient. There is nothing in the no-fault statute that indicates that the treating physician needs to get preapproval of testing before referring the patient for MRIs or any other diagnostic modalities. Therefore, to deny the first-party benefits, on the basis of lack of medical necessity, to the diagnostic center that does not come to a diagnosis based upon a physical examination of the patient can be found to be in derogation of the purpose and intent of the Insurance Law no-fault benefits statute which is expedient payment of benefits to automobile accident victims. (See, 1973 NY Legis Ann, at 298; see also, Pavone v Aetna Cas. & Sur. Co., 91 Misc 2d 658 [1977], cited in Fifth Ave. Pain Control Ctr. v Allstate Ins. Co., 196 Misc 2d at 804 [2003].) Of course, if there was a nexus between the diagnostic center and the examining physician which would impute knowledge to the diagnostic center as if it were a treating physician, a different result would have been achieved. This type of factor, however, as well as other issues of fact which might inure to the defendant’s benefit must be proven by the defendant in order to successfully create a prima facie case on its affirmative defense of lack of medical necessity in a situation such as in the case at bar.
Therefore, in a matter, such as the instant case, wherein the usual and customary medical procedure was utilized by the examining physician in referring a patient involved in a motor vehicle accident for radiological tests after a physical examination, and the patient assigned her rights to the diagnostic radiological establishment for reimbursement of no-fault benefits, the affirmative defense of lack of medical necessity should not be available as the diagnostic center does not make an independent medical evaluation of the patient and the denial of benefits to the diagnostic establishment is in derogation of the intent of Insurance Law § 5106.
Accordingly, judgment for the plaintiff in the amount of $2,666.17, plus statutory interest and attorneys’ fees.

 Pursuant to Insurance Law § 5102 (a) (1), the definition of “basic” economic loss as per the “Comprehensive Motor Vehicle Insurance Reparations Act” refers to “[a]ll necessary expenses incurred” by the injured party which should be compensated if within the detailed limitations set out in the statute.