OPINION OF THE COURT
Milagros A. Matos, J.
*545 Facts
Plaintiff medical provider Dr. Jacob Nir, assignee of Josapphat Etienne, instituted this action to recover first-party no-fault benefits from defendant insurer Allstate. Dr. Nir, a neurologist, was denied payment by the insurer for diagnostic testing he performed on the patient/insured Josapphat Etienne. The patient was injured in an automobile accident on January 15, 2004. On February 6, 2004, Dr. Nir examined the patient and conducted electromyography and nerve conduction velocity (EMG/NCV) tests that revealed nerve injury in the patient’s lower back.
At the time the services were rendered, the patient Josapphat Etienne was insured under a no-fault insurance policy issued by defendant Allstate. The no-fault benefits were properly assigned to Dr. Nir, who submitted claim forms to Allstate in the amount of $2,227.71 on February 24, 2004. On April 7, 2004, Allstate made a partial payment to Dr. Nir in the amount of $211.85, leaving a balance of $2,015.86. Defendant denied the remaining claims based upon a peer review report stating that the tests were not medically necessary. Before trial the parties stipulated that the only issue for determination by the court was whether the diagnostic testing was medically necessary as defined by Insurance Law § 5102 (a) (1), and thus whether or not defendant properly denied payment of the claim. The court conducted a full trial of this matter on February 7, 2005.
At trial, both sides presented the testimony of a physician. For defendant, the doctor that had authored the peer review report testified that the diagnostic tests were not medically necessary based on his review of Dr. Nir’s medical reports. The peer review doctor did not examine the patient himself. Even though the diagnostic testing resulted in positive findings of neurological damage to the patient’s lower back, the peer review doctor found that the tests, performed three weeks after the accident, were “medically unnecessary.” Specifically, the peer review doctor testified that not enough time had elapsed from the time of the accident to the time of the testing, and therefore the testing was premature.
Plaintiffs expert witness testified that the EMG/NCV testing was medically necessary based on his review of Dr. Nir’s medical report and accredited medical publications. He testified that the patient’s symptoms suggested that there was injury to the nerve. The patient presented complaints of persistent “radiating” pain in the cervical and lower back as well as numbness *546 and tingling. The expert witness concluded that the tests were medically necessary to diagnose radiculopathy, or nerve damage. Finally, plaintiffs witness testified that the timing of the testing was consistent with the generally accepted medical practices set forth by the American Association of Electrodiagnostic Medicine (AAEM) for both EMG and NCV testing.
Discussion
Although there have been no appellate court rulings on the issue, trial courts have consistently held that the insurer bears both the burden of production and the burden of persuasion with respect to medical necessity of the treatment or testing for which payment is sought. (King’s Med. Supply Inc. v Country-Wide Ins. Co., 5 Misc 3d 767, 771 [Civ Ct, Kings County 2004] [“(i)t is by now firmly established that the burden is on the insurer to prove that the medical services or supplies in question were medically unnecessary”]; Behavioral Diagnostics v Allstate Ins. Co., 3 Misc 3d 246 [Civ Ct, Kings County 2004]; A.B. Med. Servs. v GEICO Ins., 2 Misc 3d 26 [App Term, 2d Dept 2003]; see also Karen B. Rothenberg and Jennifer R. Rapaport, No-Fault: The Litigation Epidemic, NYLJ, Jan. 5, 2004, at 4, col 4.) Therefore, once plaintiff has established its prima facie case, defendant must prove that the treating doctor’s services were not medically necessary. As an element of its proof defendant may use a peer review report, which is a medical professional’s written evaluation of the medical necessity of the services provided. In the summary judgment context, defendant may raise triable issues of fact for lack of medical necessity with a peer review report that “set[s] forth a sufficiently detailed factual basis and medical rationale for the claim’s rejection.” (Amaze Med. Supply v Eagle Ins. Co., 2 Misc 3d 128[A], 2003 NY Slip Op 51701[U] [App Term, 2d & 11th Jud Dists 2003]; S & M Supply v Kemper Auto & Home Ins. Co., 2 Misc 3d 134[A], 2004 NY Slip Op 50209[U] [App Term, 2d & 11th Jud Dists 2004].) In other words, “to withstand a motion for summary judgment, a peer review report must set forth a factual basis sufficient to establish, prima facie, the absence of medical necessity.” (Choicenet Chiropractic P.C. v Allstate Ins. Co., 2003 NY Slip Op 50672[U], *1 [App Term, 2d & 11th Jud Dists 2003].)
In the trial context, few decisions elucidate on defendant’s burden of proof, or what evidence may be sufficient to establish that the services were medically unnecessary. At a minimum, defendant must establish a factual basis and medical rationale *547 for the lack of medical necessity of plaintiffs services. (See CityWide Social Work & Psychological Servs. v Travelers Indent. Co., 3 Misc 3d 608 [Civ Ct, Kings County 2004]; Inwood Hill Med. v Allstate Ins. Co., 3 Misc 3d 1110[A], 2004 NY Slip Op 50565[U] [Civ Ct 2004] [at trial, the defense that the claim was not medically necessary “must be supported by sufficient factual evidence or proof and cannot simply be conclusory”].) Therefore, if defendant provides an insufficient factual basis or medical rationale for its peer review report at trial, the court will afford the peer review report minimal weight, and defendant may fail to sustain its burden of proof.
A peer review report’s medical rationale is insufficient if it is unsupported by or controverted by evidence of medical standards. For example, the medical rationale may be insufficient if not supported by evidence of the “generally accepted medical/ professional practice.” (CityWide Social Work & Psychological Servs. v Travelers Indent. Co., 3 Misc 3d 608, 612 [Civ Ct, Kings County 2004].) “Generally accepted practice is that range of practice that the profession will follow in the diagnosis and treatment of patients in light of the standards and values that define its calling.” (CityWide Social Work & Psychological Servs. v Travelers Indent. Co., 3 Misc 3d at 616, supra.) Alternatively, if the plaintiff offers evidence that its medical services were consistent with generally accepted medical practice, the defendant’s peer review report will be afforded less weight and defendant may fail to sustain its burden of proof at trial. (See Elm Med., P.C. v American Home Assur. Co., 2003 NY Slip Op 51357[U], *12 [Civ Ct 2003] [defendant peer review doctor’s conclusion that the electrodiagnostic testing was not “properly documented” did not contradict plaintiffs testimony of medical necessity and defendant failed to carry its burden].)
A peer review report’s factual basis may be insufficient if it fails to provide specifics of the claim, is conclusory, or otherwise lacks a basis in the facts of the claim. (Amaze Med. Supply v Allstate Ins. Co., 3 Misc 3d 43 [App Term, 2d & 11th Jud Dists 2004].) For example, a defendant may not establish lack of medical necessity if the only reason for the denial was that the peer review doctor did not have enough information in the claim file upon which a determination could be made. (Park Neurological Servs. P.C. v GEICO Ins., 4 Misc 3d 95 [App Term, 2d Dept 2004].) One court held that a peer review report may be insufficient if the peer review doctor merely reviewed records, rather than examining the insured patient, in preparing the peer *548 review report. (Alliance Med. Off. v Allstate Ins. Co., 196 Misc 2d 268 [Civ Ct, Kings County 2003]; see also Fifth Ave. Pain Control Ctr. v Allstate Ins. Co., 196 Misc 2d 801 [Civ Ct, Queens County 2003].)
In this case, defendant’s doctor recommended denial of plaintiffs claim because, in his opinion, the diagnostic testing performed by plaintiff Dr. Nir was done prematurely. During testimony the peer review doctor cited only a review of Dr. Nir’s medical reports as the basis for his peer review report. He did not physically examine the patient before writing the peer review report. He cited no medical authority, standard, or generally accepted medical practice as a medical rationale for his findings. Finally, defendant was not able to explain how the tests could be medically unnecessary when the tests did in fact yield positive findings of nerve damage. Such scant factual basis and medical rationale will not sustain defendant’s burden of proof.
Furthermore, defendant’s case was competently rebutted by plaintiffs expert witness. Defendant could not establish its conclusory medical rationale, that the testing was done prematurely, in the face of plaintiffs evidence of the generally accepted medical practice. Plaintiffs witness testified that the AAEM recommends EMG/NCV testing either “acutely” after or “several weeks” after an accident occurs. On cross-examination, defendant’s peer review doctor agreed that the AAEM is authoritative in the field of electrodiagnostic medicine. The generally accepted medical practice cited by the AAEM was consistent with Dr. Nir’s practice in this case.
Conclusion
Based on the evidence, the court concludes that the testimony and peer review report of defendant’s peer review doctor were insufficient to sustain defendant’s burden of proof on the only issue before this court, lack of medical necessity. Judgment should be entered for the plaintiff in the amount of $2,015.86, plus interest from February 24, 2004 and attorneys’ fees as provided by the insurance regulations, together with the statutory costs and disbursements of this action.